UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
DAVID NORKIN,                            :     05 CIV. 9137 (DLC)
                                         :
                    Plaintiff,           :     OPINION AND ORDER
                                         :
          -v-                            :
                                         :
DLA PIPER RUDNICK GRAY CARY, LLP         :
                                         :
                    Defendant.           :
---------------------------------------- X

Appearances:

For plaintiff:
Richard Asche
Litman, Asche & Gioiella, LLP
45 Broadway
New York, NY 10006

For defendant:
Jeffrey Schreiber
Howard S. Koh
Meister Seelig & Fein LLP
2 Grand Central Tower
140 East 45th Street
New York, NY 10017

DENISE COTE, District Judge:

    Plaintiff David Norkin ("Norkin") brought this action in New York State Supreme Court against DLA Piper Rudnick Gray Cary, LLP ("Piper"), the lawfirm that he claims represented both him and Britestarr Homes, Inc. ("Britestarr"), a company he owned and managed. Norkin alleges that Piper committed professional malpractice and breached its fiduciary duty to him and Britestarr by operating under an undisclosed conflict of interest when it (1) provided him with advice in connection with his personal bankruptcy proceeding, and (2) recommended that Britestarr file for bankruptcy and that Norkin resign as its president. Piper removed the action to this Court on the ground that it is related

to Norkin's and Britestarr's bankruptcy proceedings.

Plaintiff now moves to remand the action to state court. Defendant opposes this motion and moves instead to transfer the matter to the United States District Court for the District of Connecticut. Defendant also moves to dismiss the complaint, or alternatively, for summary judgment. For the following reasons, plaintiff's motion to remand is denied; defendant's motion to transfer is granted; and defendant's motion to dismiss or alternatively, for summary judgment, is transferred to the District of Connecticut.

Background

The following facts are taken from the complaint or are undisputed, except where otherwise noted. From 1983 until May 2002, Norkin was the president of Britestarr. Norkin was initially Britestarr's sole beneficial shareholder. At some point after Britestarr's formation, but before the events that are the subject of this action, Norkin transferred record ownership of the Britestarr stock to his then wife, Friema Norkin.

In September 1988, Britestarr took out a loan from Lloyds Bank ("Lloyds"), which was secured by Friema Norkin's pledge of the Britestarr shares. Britestarr used the Lloyds loan to purchase a 28-acre property in Bronx, New York (the "property"), which Norkin describes as "ideally suited to serve as home to a large power plant." In or about 1990, the Norkins divorced, and Friema Norkin conveyed her interest in the Britestarr shares back

to Norkin, pursuant to their separation agreement and divorce decree. Lloyds, however, retained possession of the share certificates. In 1997, Norkin filed for bankruptcy protection in United States Bankruptcy Court for the District of Connecticut and listed the Britestarr shares as an asset of his estate.

In 1998, ABB Equity Ventures ("ABB") began negotiations with Britestarr to purchase the property and develop a power plant on it. On December 31, 1998, ABB agreed to pay Britestarr $1.4 million for an exclusive three-year option to purchase the property. If ABB exercised the option, Britestarr could choose to receive $31.4 million in cash immediately, or payments of approximately $225 million over 30 years. In 1999, Norkin retained Piper to assist him and Britestarr in, among other things, "advancing the transaction" so that ABB would exercise its option.[1]

Britestarr defaulted on the Lloyds loan, and in 2001, ABB purchased Lloyds's rights against Britestarr, including any claims to the Britestarr shares originally pledged by Friema Norkin. ABB filed suit in Norkin's personal bankruptcy proceedings, arguing that Friema Norkin still owned the Britestarr shares. Norkin claims that Piper provided him with advice in his personal capacity regarding the ownership of the shares.

In the spring of 2002, ABB informed Piper that it was

---

[1] Piper claims that it never represented Norkin personally in connection with the transactions at issue here. Instead, it claims it was retained only by Britestarr.

3

willing pay over $1 million to extend the option period.
According to Norkin, Piper never advised him or Britestarr of the
offer. Between March and May 2002, Piper advised Britestarr to
file for bankruptcy and recommended that Norkin resign as the
company's president.[2] Piper expressed the view that filing for
bankruptcy would remove impediments that would otherwise prevent
Britestarr from selling the property. Norkin and Britestarr
followed Piper's advice. Britestarr's bankruptcy proceeding,
originally filed in New York, was transferred to the same
Bankruptcy Judge in the District of Connecticut who was handling
Norkin's bankruptcy. Britestarr subsequently filed an adversary
proceeding against Piper, alleging that "the acts of Norkin along
with Piper's assistance and counsel cost Britestarr to loose
[sic] a tremendous business opportunity worth potentially
hundreds of millions of dollars, and forced Britestarr into ...
eventual bankruptcy."[3]

On May 23, 2002, on the motion of the Internal Revenue

---

[2] Piper claims that Norkin could not have served as the corporate fiduciary of Britestarr in connection with its bankruptcy because he had previously pled guilty in this Court to bankruptcy fraud and conspiracy to bribe a federal judge. United States v. Norkin, No. 93 Cr. 837 (LAP)(S.D.N.Y. filed Oct. 7, 1993).

[3] Although Britestarr's complaint alleges that Norkin engaged in inequitable conduct, Norkin is not named as a defendant. Instead, Britestarr and Norkin have entered into a joint prosecution agreement under which they will each share in the other's recovery, if any, against Piper. Britestarr's counsel is also providing Norkin with financial assistance in prosecuting this action. Piper describes this alleged agreement in its memorandum of law in support of its motion to transfer. Norkin does not appear to contest any of the allegations mentioned here.

4

Service, the Bankruptcy Court converted Norkin's case from a Chapter 11 case to a Chapter 7 case. The court appointed a Chapter 7 trustee to exercise control over the property of Norkin's estate.

Norkin filed this action in New York State Supreme Court on May 9, 2005. On October 6, 2005, he served defendant with a complaint alleging that Piper breached its fiduciary duty to Norkin and committed professional malpractice in its representation of him. Norkin alleges that Piper was operating under a conflict of interest while it advised him and Britestarr, as it was also serving as counsel for TransGas, a competing power plant project. According to Norkin, Piper stood to earn more in legal fees from the TransGas project than it would from the ABB project.

Norkin requests "not less than" $10 million in compensatory damages and an additional $10 million in exemplary damages. Norkin does not explain how he arrives at the $10 million figure for the damages he allegedly suffered, but he does argue that if he had known of the $1 million offer to extend the option period, he would have (1) been able to settle ABB's claim in his personal bankruptcy over the ownership of the Britestarr shares and would have "remain[ed] as Britestarr's rightful owner and president"; (2) continued to serve as Britestarr's president and collected a salary and benefits; (3) acquired the necessary permits to facilitate ABB's purchase of the property; and (4) been able to keep Britestarr from filing for bankruptcy.

On October 26, 2005, pursuant to 28 U.S.C. §§ 1334 and 1452

("Section 1334" and "Section 1452," respectively), Piper removed the action to this Court on the ground that it "arises in or is related to" the federal bankruptcy cases of Norkin and Britestarr. Plaintiff now moves to remand the action to state court. Defendant moves instead to transfer it to the District of Connecticut. Defendant also moves to dismiss the complaint, or alternatively, for summary judgment.

Discussion

A. Plaintiff's Motion to Remand

Section 1334 confers original and exclusive jurisdiction on the district courts for "all cases arising under title 11," and original but <u>non</u>-exclusive jurisdiction for all cases "arising in or related to cases under title 11." 28 U.S.C. § 1334(a)-(b). The law further allows a party to remove an action from state court to federal district court if the district court has jurisdiction under Section 1334. 28 U.S.C. § 1452. The district court is required, however, to abstain from hearing the action and remand it to state court if the proceeding is "based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11" and the proceeding "can be timely adjudicated [] in a State forum of appropriate jurisdiction." <u>Id.</u> at § 1334(c)(2). In all other cases, the district court <u>may</u> abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." <u>Id.</u> at § 1334(c)(1). In other words, if the case is simply "related to" a bankruptcy

6

proceeding, remand is generally required; if it "aris[es] under" Title 11 or "aris[es] in" a Title 11 case, remand is discretionary.

This Circuit has held that those cases "arising under" or "arising in" Title 11 proceedings are the same as those defined as "core proceedings" under 28 U.S.C. § 157(b). Mt. McKinley Insurance Co. v. Corning Inc., 399 F.3d 436, 447-48 (2d Cir. 2005). "Core proceedings" touch on issues at the heart of federal bankruptcy power, such as "the restructuring of debtor-creditor relations." In re United States Lines, Inc., 197 F.3d 631, 636 (2d Cir. 1999)(citation omitted). When the dispute sounds in contract, the determination of whether the lawsuit is core turns on "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." Mt. McKinley, 399 F.3d at 448 (citation omitted). The court can also look to the nature of the proceeding and deem it to be core if "(1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." Id. (citation omitted).

Here, these factors lead toward the conclusion that Norkin's claims are core. Norkin and/or Britestarr retained Piper after Norkin filed for bankruptcy. The contract at issue therefore cannot be considered "antecedent" to the petition. As the Second Circuit has held, "[t]he bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under [28 U.S.C.] § 157(b)(2)(A)." United States Lines, 197 F.3d at

7

637-38. Further, because certain of the claims arise out of advice provided by Piper to Norkin <u>in his bankruptcy proceeding</u>, they cannot be considered independent of that petition.[4] Nor can this case be deemed independent of the Britestarr bankruptcy, given that one of Norkin's primary allegations is that Piper's faulty advice <u>led to</u> the Chapter 11 filing.

Moreover, the case directly affects the potential recoveries of creditors in the bankruptcy proceedings. First, the complaint clearly seeks to hold Piper liable for Norkin's apparent loss of the Britestarr shares. Norkin claims that Piper commited malpractice when it "failed to advise [him] of ABB's March 2002 settlement proposal that would have allowed Norkin to remain as Britestarr's rightful owner and President." Further, he alleges that Piper "reviewed documents related to the ownership, as between plaintiff and his former wife, of the Britestarr shares, and gave plaintiff advice in his personal capacity" -- an allegation that would be wholly irrelevant if Norkin were not seeking recovery on that basis.

Norkin does not argue with Piper's contention that any claim to the Britestarr shares is property of Norkin's bankruptcy estate. Instead, he now disclaims all recovery based on the

---

[4] The Fourth Circuit has held that "jurisdiction exists over a malpractice claim against a lawyer for providing negligent advice to a debtor in a bankruptcy case" because it "would have no practical existence but for the bankruptcy case." <u>Grausz v. Englander</u>, 321 F.3d 467, 471-72 (4th Cir. 2003)(citation omitted). Although the <u>Grausz</u> decision turned partly on the Fourth Circuit's broad interpretation of "arising in" jurisdiction, which has not been adopted in our Circuit, the intuitive logic of the court's decision is no less applicable here.

"ownership dispute" over the Britestarr shares, implicitly conceding that such a claim would effectively defeat his argument that his case is non-core. Norkin, however, cannot defeat federal court jurisdiction by disclaiming certain factual allegations after the matter has been removed. As this Court has previously held, "federal jurisdiction arising under Section 1334 is determined, like federal jurisdiction generally, on the basis of the facts at the time of removal." In re Worldcom, Inc. Sec. Litig., 294 B.R. 553, 556 (S.D.N.Y. 2003)(addressing changes in circumstances after the filing of the complaint).

Even if Norkin could effectively eliminate the portion of his claims that relate to the Britestarr shares, he admits that he has entered into an agreement with the trustee of his bankruptcy estate that the trustee will "receive a portion of any proceeds obtained by plaintiff in exchange for a release of possible claims by the estate against Mr. Norkin." Although "contract claims are not rendered core simply because they involve property of the estate," United States Lines, 197 F.3d at 637, a proceeding is likely to be deemed core if it substantially impacts the potential recovery of creditors. Compare United States Lines, 197 F.3d at 638 (holding a proceeding to be core because the contracts at issue "may well be the most important asset of the debtor's estate" (citation omitted)) with Mt. McKinley, 399 F.2d at 449 (holding a proceeding to be non-core in part because the contracts at issue "are not the only or even the major assets available to pay asbestos claimants"). Here, the importance of the recovery to Norkin's estate is evidenced by the

9

estate's willingness to release certain claims against Norkin in exchange for a portion of any recovery. Also, as noted above, Norkin has apparently entered into an agreement with Britestarr, which is in bankruptcy proceedings in the District of Connecticut and has also sued Piper, to share with Britestarr a portion of any recovery from this lawsuit. The mere recitation of the various connections between this case and the bankruptcy estates of Britestarr and Norkin demonstrates that this is not a run-of-the-mill contract dispute with minimal potential to impact a bankruptcy proceeding. Rather, the outcome promises to affect substantially creditors' rights in not one, but two, bankruptcies.

The determination that the proceeding is core does not, of course, end the inquiry. The Court may still abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) is informed by and interpreted according to "principles developed under the judicial abstention doctrines." In re Pan American Corp., 950 F.2d 839, 846 (2d Cir. 1991). According to those principles, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), and may abstain only for a few "extraordinary and narrow exception[s]." Id. at 813 (citation omitted).

Courts in this district commonly consider twelve factors in addressing a motion based on Section 1334(c)(1):

>     (1) the effect or lack thereof on the efficient
>     administration of the estate if a Court recommends
>     abstention, (2) the extent to which state law issues
>     predominate over bankruptcy issues, (3) the difficulty
>     or unsettled nature of the applicable state law, (4)
>     the presence of a related proceeding commenced in state
>     court or other nonbankruptcy court, (5) the
>     jurisdictional basis, if any, other than 28 U.S.C. §
>     1334, (6) the degree of relatedness or remoteness of
>     the proceeding to the main bankruptcy case, (7) the
>     substance rather than form of an asserted "core"
>     proceeding, (8) the feasibility of severing state law
>     claims from core bankruptcy matters to allow judgments
>     to be entered in state court with enforcement left to
>     the bankruptcy court, (9) the burden [on] the court's
>     docket, (10) the likelihood that the commencement of
>     the proceeding in a bankruptcy court involves forum
>     shopping by one of the parties, (11) the existence of a
>     right to a jury trial, and (12) the presence in the
>     proceeding of nondebtor parties.

In re Worldcom Inc. Sec. Litig., 293 B.R. 308, 332 (S.D.N.Y. 2003). Here, these factors do not overcome the presumption in favor of maintaining federal jurisdiction -- and, indeed, weigh heavily against abstention.

State law issues do not predominate here. Although plaintiff's causes of action are styled as New York State law claims, they turn largely on issues that are intertwined with the bankruptcies of Norkin and Britestarr, including the propriety of Piper's advice related to and leading to those proceedings. To the extent issues of New York law arise, they are in the well settled areas of professional malpractice, negligence, and breach of fiduciary duty. Retention of federal jurisdiction would not hamper efficient administration of the estate, and, if anything, would promote it, as each of the related matters is proceeding in federal court. Therefore, the Court will not exercise discretionary abstention, and will instead retain jurisdiction

11

over the present matter.

B. Defendant's Motion to Transfer to the District of Connecticut

Pursuant to 28 U.S.C. § 1412 ("Section 1412"), a case or proceeding under Title 11 may be transferred to another district "in the interest of justice or for the convenience of the parties." Section 1412 applies to the transfer of core proceedings, as well. In re Enron Corp., 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004). Transfer under Section 1412 requires consideration of substantially the same factors as transfer under 28 U.S.C. § 1404(a). Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 749 (S.D.N.Y. 2004). Those factors include:

(1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of court with the applicable law; and (8) the interests of justice, including the interests of trial efficiency.

Id. at 749-50. In addition, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." In re Manville Forest Prodcts Corp., 896 F.2d 1384, 1391 (2d Cir. 1990).

Here, the factors militate in favor of transfer. The weight normally attached to the plaintiff's choice of forum is effectively "cancel[led] ... out" in this case by the presumption that the proceeding should be heard in the same district as the underlying bankruptcy. Heyman, 306 B.R. at 750. Further,

12

Norkin's claims arise out of many of the same operative facts as Britestarr's case against Piper, which, along with both of the relevant bankruptcies, is proceeding in Connecticut.[5] And given that the courthouses for this District and the District of Connecticut are only 61 miles apart,[6] there is no reason to believe that transfer would have a substantial adverse impact on either party's ability to prosecute or defend the case. Defendant's motion to transfer is accordingly granted.

C.  Defendant's Motion to Dismiss or Alternatively, for Summary Judgment

Because Piper's motion to transfer is granted, its motion to dismiss or alternatively, for summary judgment, is transferred to the District Court for the District of Connecticut.

---

[5] Any doubt about the close relationship between the two cases is eliminated by Norkin and Britestarr's apparent agreement to split the recoveries.

[6] See http://maps.yahoo.com/dd.

13

Conclusion

For the foregoing reasons, plaintiff's motion to remand is denied; defendant's motion to transfer is granted; and defendant's motion to dismiss or alternatively, for summary judgment, is transferred to the District of Connecticut.

SO ORDERED:

Dated: New York, New York
March 31, 2006

DENISE COTE
United States District Judge